Caree Harper SBN 219048
LAW OFFICES OF CAREE HARPER
100 Wilshire Blvd. Suite 700
Santa Monica, CA 90401
(213) 386-5078 Tel.
Email: *ch1@attorneyharper.com*

Attorneys for Plaintiffs:
**DIONDRA WILLIAMS**
as Guardian *ad Litem* for Minor **"SM"**;
**SOLEMULI AFAESE,**
as Guardian *ad Litem* for Minor **"AM"**; &
**IRENE BAILEY** as the representative for the
Estate of Anthony McClain, Sr.

# UNITED STATES DISTRICT COURT
# IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DIONDRA WILLIAMS** as Guardian *ad Litem* for Minor **"SM"**; **SOLEMULI AFAESE** as Guardian *ad Litem* for Minor **"AM"**; & **IRENE BAILEY** as the representative for the Estate of Anthony McClain, Sr.<br><br>Plaintiffs,<br><br>vs.<br><br>**PASADENA P.D. OFC. EDWIN DUMAGUINDIN, OFC. C. DUMAGUINDIN, CITY OF PASADENA, & CHIEF JOHN PEREZ**, individually and in their official capacities and DOES 1-10 inclusive,<br><br>Defendants. | Case No.: 20-CV-09042<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. EXCESSIVE FORCE / CRUEL & UNUSUAL PUNISHMENT** (Per 42 U.S.C. § 1983)<br>**2. DENIAL OF/ INADEQUATE MEDICAL CARE** (Per 42 U.S.C. § 1983)<br>**3. SUBSTANTIVE DUE PROCESS** (Per 42 U.S.C. § 1983)<br>**4. *MONELL* ALLEGATIONS** (Per 42 U.S.C. § 1983)<br>**5. CONSPIRACY** (Per 42 U.S.C. § 1985)<br>**6. BATTERY/ WRONGFUL DEATH**<br>**7. NEGLIGENCE/ WRONGFUL DEATH**<br>**8. *BANE* CIVIL RIGHTS ACT** (CA. Civil Code § 52.1)<br>**9. TORTS-IN-ESSENCE** |

1  Plaintiffs allege:

2  **INTRODUCTION.**

3  1.    This civil rights action seeks compensatory and punitive damages

4  from Defendants for violating various civil rights under the United States

5  Constitution and state law in connection with the fatal use force on the decedent,

6  **ANTHONY McCLAIN, Sr.**

7  **PARTIES**

8  2.    **"SM"** is a two-year old Minor and the natural daughter of the

9  Decedent, **ANTHONY McCLAIN,** and **DIONDRA WILLIAMS. WILLIAMS**

10  sues on her daughter's behalf as Guardian *ad Litem* and as successor-in-interest

11  pursuant to California Civil Code § 377.32.

12  3.    **"AM"** is a Minor and the natural son of the Decedent **ANTHONY**

13  **McCLAIN** and **SOLEMULI AFAESE.  AFAESE** sues on her son's behalf as

14  Guardian *Ad Litem* as a successor-in-interest pursuant to California Civil Code §

15  377.32.

16  4.    Ms. **IRENE BAILEY**, is the maternal grandmother of **ANTHONY**

17  **McCLAIN** and raised him since he was a toddler.  **BAILEY** sues as successor-in-

18  interest pursuant to California Civil Code § 377.32.

19  5.    At all relevant times, **ANTHONY McCLAIN** ("DECEDENT"), a

20  Black man, was an individual residing in the County of Los Angeles, California.

21  6.    Defendant, **EDWIN DUMAGUINDIN,** at all relevant times was and

22  is a sworn police officer at the **PASADENA POLICE DEPARTMENT.**

23  **DUMAGUINDIN** was acting under color of law within the course and scope of

24  his duties as an officer for the Pasadena Police Department ("PPD") with the

25  complete authority and ratification of his principal, Defendant CITY, when he shot

26  and killed ANTHONY McCLAIN.

27  7.    Defendant, **EDWIN DUMAGUINDIN** is a police officer for the

28  **PASADENA POLICE DEPARTMENT. DUMAGUINDIN** was acting under

1   color of law within the course and scope of his duties as an officer for the Pasadena

2   Police Department ("PPD") with the complete authority and ratification of his

3   principal, Defendant CITY, when he failed to intervene, assist and un-handcuff

4   ANTHONY McCLAIN after he was mortally wounded by Defendant, **EDWIN**

5   **DUMAGUINDIN.**

6       8.   Defendant, **PASADENA POLICE CHIEF JOHN EDUARDO**

7   **PEREZ**, at all relevant times, was a sworn police officer, supervisor and

8   policymaker at the Pasadena Police Department.

9       9.   Defendant, **"DOE 1,"** at all relevant times, was and is a sworn police

10  officer at the Pasadena Police Department who racially profiled **WITNESS 1** and

11  **ANTHONY McCLAIN** and performed a pretextual car stop on the vehicle in

12  which DECEDENT was a passenger. **DOE 1** is sued herein for conspiracy for

13  attempting to cover up a bad shooting and for furtherance of that conspiracy by

14  arresting the driver **(WITNESS 1)** for possession of a handgun when there was no

15  evidence to support that charge.

16      10.  At all relevant times, Defendant **CITY OF PASADENA ("CITY")** is

17  and was a duly organized public entity, form unknown, existing under the laws of

18  the State of California. At all relevant times, CITY was the employer of

19  Defendants and DOES who were either police officers or firefighters, and DOES

20  1-10 who were police officer and supervisorial officers, and who were managerial,

21  supervisorial, and policymaking employees of the CITY police department.

22      11.  At all relevant times, DOES 2-10 were duly authorized employees and

23  agents of CITY, who were acting under color of law within the course and scope of

24  their respective duties as police officers and with the complete authority and

25  ratification of their principal, Defendant CITY or were firefighters with the

26  complete authority and ratification of their principal, Defendant CITY.

27      12.  At all relevant times, Defendants and DOES 1-10 were duly appointed

28  officers and/or employees or agents of the CITY, subject to oversight and

1    supervision by CITY's elected and non- elected officials.

2        13.    In doing the acts and failing and omitting to act as hereinafter
3    described, Defendants were acting on the implied and actual permission and
4    consent of CITY.

5        14.    At all times mentioned herein, each and every CITY defendant was
6    the agent of each and every other CITY defendant and had the legal duty to
7    oversee and supervise the hiring, conduct and employment of each and every CITY
8    defendant.

9        15.    The true names of defendants DOES 1 through 10, inclusive, are
10   unknown to Plaintiffs, who therefore sue these defendants by such fictitious names.
11   Plaintiffs will seek leave to amend this complaint to show the true names and
12   capacities of these defendants when they have been ascertained. Each of the
13   fictitious named defendants is responsible in some manner for the conduct and
14   liabilities alleged herein.

15       16.    On August 27, 2020, Plaintiffs filed comprehensive and timely claims
16   for damages with CITY pursuant to applicable sections of the California
17   Government Code and supplemented said claim thereafter.

18

19                          **JURISDICTION AND VENUE**

20       17.    This civil action is brought for the redress of alleged deprivations of
21   constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the
22   Fourth and Fourteenth Amendments of the United States Constitution. Jurisdiction
23   is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

24       18.    Venue is proper in this Court under 28 U.S.C. § 1391(b), because
25   Defendants reside in, and all incidents, events, and occurrences giving rise to this
26   action occurred in, the County of Los Angeles, California.

27   ///

28   ///

## STATEMENT OF FACTS

19.     It was a beautiful day in the sunny Southern California town of Pasadena on August 15, 2020. An attractive young man with an easy smile was playing on his smartphone at La Pintoresca Park shortly after 7 P.M. Anthony McClain was laughing, playing and making funny faces while "Face-Timing" with his most recent pride and joy: his daughter **"SM"**. Mr. McClain had just purchased tickets with Plaintiff WILLIAMS, "SM's" Mother, to travel to watch his son, **"AM"**, play in a football tournament on August 20, 2020. The anticipation for the trip grew with every FaceTime call to little **"AM"**.

20.     Anthony had a great co-parenting relationship with Plaintiffs WILLIAMS and AFAESE and their blended families looked forward to spending time together. Anthony walked from the park and saw a friend pass by in a vehicle. The friend, WITNESS 1, stopped and picked him up and they proceeded to turn onto Raymond Ave. from Grandview. He was in a particularly good mood on this hot day. He took off the Black sports jersey while in the passenger's seat. **Eye-Witness 1** observed Mr. McClain's shiny Michael Kors belt buckle and waistband area. Witness-1 specifically remembered this because he liked the style "MK" buckle. Witness-1 did not observe any weapons or bulges or waistband.

21.     Just moments into their ride, Pasadena Police officers spotted the two Black men and made an immediate U-turn to pull over the vehicle because of a missing front license plate. California Vehicle Code Section 5200 governs this equipment violation and the driver can be cited for the infraction. Data will show that nearly all of the motorists in Pasadena pulled over for this infraction are Black while less than 10 percent of the citizens in Pasadena are Black.

22.     After the officers initiated the pretextual traffic stop, the driver, **Witness 1**, was cooperative and handed **DOE Defendant Officer 1** his registration and he and Anthony showed him the front plate that was loose inside the vehicle. **DOE Defendant Officer 1**, the "Primary Officer", tossed the paperwork into the

1   driver's side rear open window after no more than a glance.  Clearly the missing

2   license plate was not the real reason for the stop.  The true reason for this pretexual

3   car stop was to get the occupants out of the car for a pat search and interrogation.

4   The driver admitted to not having a license in his possession, and he continued to

5   answer questions.

6        23.   **DOE Defendant Officer 1** opened the driver's door and instructs the

7   driver to exit and stand on the sidewalk although he is cooperative.  While Officer

8   1 is pat searching the driver, **DUMAGUINDIN**, who is supposed to be Officer 1's

9   "cover unit", invites chaos by opening the passenger side door and instructing Mr.

10   McClain to exit the vehicle.  Both officers are now actively engaging two

11   unsecured men as primary officers with no designated "cover unit" purposefully

12   put themselves and the men they were detaining, in danger.

13       24.   Mr. McClain asserted his right NOT to speak with **DEFENDANT**

14   **SHOOTING Officer DUMAGUINDIN** and initially begins to walk away as it

15   was his Constitutional right to do.  **DUMAGUINDIN** grabbed Mr. McClain's left

16   forearm without probable cause to detain or arrest him and, likely fearing for his

17   life, Mr. McClain flees the scene.

18   Anthony is seen on video kicking off his shoes, clearly fully committed to getting

19   away, and not even passively committed to posing a threat

20       25.   As Anthony **McCLAIN** ran, he was fleeing from decades of

21   oppression and fear of police.  As deadly **DUMAGUINDIN** chased Anthony, he

22   was pursuing from an embolden position of power co-signed by a local District

23   Attorney who refuses to prosecute officers for killing Black men, a police chief

24   who was promoted through the ranks due to his command over a rogue team of

25   SES officers that served as judges and executioners to the Black community in

26   Northwest Pasadena and finally a general unchecked mentality that PPD officers

27   do not get disciplined for excessive in Northwest Pasadena.

28   ///

1       26.    At 2 minutes and 52 seconds into the patrol car camera footage

2   Anthony is clearly holding up pants with his left hand as a flash of his shiny brass

3   "MK" belt buckle is visible.

4       27.    There were at least three people in the direct line of fire as Officer

5   **DUMAGUINDIN** fired, but he apparently did not care. One pedestrian, wearing a

6   white T shirt and Black shorts, runs out of the way of the bullets coming toward

7   him. One large stray caliber bullet hit 1416 N. Raymond Ave. within inches of the

8   front bedroom window.

9       28.    Mr. McClain was 6'1" tall and had a very slender frame. Had he truly

10  possessed a weapon in his waistband it would have been visible or would have

11  dropped out of his shorts when he discard his shoes to run.

12      29.    Witness 1, saw Mr. McClain adjust his slightly sagging shorts as he

13  exited the vehicle pursuant to orders of Defendant DUMAGUINDIN. Witness-1

14  never saw a gun in McCLAIN's presence as he watched Officer DUMAGUINDIN

15  shoot from approx. 6-10 ft away Anthony McCLAIN. Anthony never made any

16  threatened gestures but did flinch after being shot yet he continued to run for his

17  life.

18      30.    **Eye-Witness 2**, who had his cell phone in his hand, witnessed the

19  shots and said that he ducked and ran to the west side of the street because one of

20  the bullets "whizzed" by him.

21      31.    Although mortally wounded, Mr. McClain continued to run but

22  appeared to listen to the familiar voice of **Eye-Witness 2** telling him to lay down,

23  spread his arms and that he is filming the incident:

24

25      **Witness 2:**
    Don't move....

26      Lay yo' ass down, bro!

27      Do not move, bro!

28

**Witness 3[1]:**
Please lay down... lay down.

**Cover Officer 2 (approached from opposite direction):**
Hey where is the gun?

**DEFENDANT SHOOTING Officer DUMAGUINDIN:**
Where is the gun, where is the gun at?

**Anthony McClain:**
I didn't have no gun.

**DEFENDANT SHOOTING Officer DUMAGUINDIN:**
He tossed it up there. I got him.

**Cover Officer 2:**
OK, you got him? Alright I'm going hands on.

**Anthony McClain:**
I'm passing out.

**Cover Officer 2:**
'I'll get it, I got you, keep your hands out!

**Wit 2:**
Anthony. Don't move bro.

**Cover 2:**
Keep your hands out. Keep your hands out.

**Wit 2:**
Don't move.

**Anthony:**
Come on, *I can't breathe.*

**Cover Officer 2:**
I got you, I got you, I got you.

---

[1] Witnessed shooting and never saw Mr. McClain discard a weapon.

McCLAIN COMPLAINT FOR DAMAGES

**DEFENDANT SHOOTING Officer DUMAGUINDIN:**
The ambulance is coming, ***buddy.*** The ambulance is coming.
[The ambulance had not yet been called.]

**Anthony McClain:**
Come on.... (painful moan)

**Cover 2:**
Here, I got you, I got you.  How many times have you been shot?

**Anthony:**
Two times.

**Cover Officer 2:**
Where is the gun? Where's the gun?

**Anthony:**
I don't have no gun.

**Cover Officer 2:**
Put your hands behind your back, put your hands behind your back- I'm going to help you. I'm gonna' help you, OK?

[Cover Officer 2 then twists and contorts Anthony's left arm behind his back as his right side goes limp.]

**Cover Officer 2:**
I'm going to help you OK? Come on come on. I need your arm, I need you your arm.

[This cover officer and the shooting officer Dumaguindin then forcefully pried Mr. McClain's right arm from underneath his body and then handcuff the mortally wounded victim.....In reaction to the violent cuffing:]

**Wit 2:**
What the fuck?!

**Shooting Officer DUMAGUINDIN:**
Get down, get down.

[The victim *was already down*, but the shooter has been taught to repeat commands like "get down", "stop resisting" for the possible auditory witnesses . So even though the videotaped evidence shows a different picture the officers persisted with their narration:]

**Cover Officer 2:**
Stop reaching, stop reaching.

[The victim *is not* reaching].

**Wit 2:**
—-Fucking bullet.

**Cover Officer 2/ (DOE Defendant 2):**
Hey I'm gonna help him!

**DOE Defendant 2** does *not* help him.  Instead of ***helping*** the mortally wounded artist, father, friend, lover, brother, and grandson, **DOE Defendant 2**, hastens Anthony's demise with his next actions and inactions.

32.    Both officers left Mr. McClain handcuffed with his hand behind his back and on his stomach for a protracted period of time and they push down on his back causing the victim to visibly struggle to breathe and bleed out from the exit wound in his chest. The handcuffs and officer's body weight prevented Anthony's lungs from expanding and he began to lose consciousness. If the officers viewed Anthony as an actual human being, they would not have treated him in this manner after he was shot repeatedly in the back. Pasadena PD has continued to employ officers who cannot seem to manage the transition from "arrest mode" to "preserve life" mode.

///

1    33.    Defendant Officer Dumaguindin and DOE Defendant 2 intentionally

2    kept Mr. McClain on his stomach in a contorted position, aggravating his injuries.

3    Both officers failed miserably at their primary duty to "protect life".

### DUMAGUINDIN: Danger to the community

5    34.    The Defendant shooting Officer Dumaguindin endangered the

6    community by opening fire on a fleeing pedestrian that he had absolutely no right

7    to detain. The shooter's order to stop left Anthony McClain with no time to stop

8    before he was shot.

9    35.    By shooting the fleeing Anthony McClain multiple times *in the back*,

10   the **DEFENDANT OFFICER** violated AB392[2].

11   36.    The scene was then completely contaminated with onlookers,

12   responding units and eventually firefighter/ paramedics. At some point the shooter

13   searched for what he says was Mr. McClain's handgun on the *east* side of the street

14   in the bushes of houses on the 1400 block after touching Mr. McClain's bloody,

15   bullet ridden body. Police officials later assert that while mortally wounded and in

16   full sight of Officer Dumaguindin and half a dozen other witnesses, Mr. McClain

17   was able to throw a large Black 9mm handgun across the street to the curbside at

18   the park on the *west* side of the street without the pursuing officer seeing him

19   discard the weapon (purportedly without leaving his fingerprints anywhere on the

20   weapon). This is simply unbelievable. Defendant PEREZ will and has, from the

21   onset, maintained Mr. McClain's DNA was on the weapon. In actuality, Mr.

---

[2] On August 19, 2019, Governor Newsom signed California Assembly Bill 392, a police use-of-force bill that redefines the circumstances under which the use of lethal force by a peace officer is considered "justifiable". The law is intended to encourage law enforcement to increasingly rely on **alternative methods** such as **less-lethal force or de-escalation techniques**.
Under the new law, lethal force by a peace officer is only justifiable "when necessary in defense of human life." Specifically, AB 392 provides that a peace officer is justified in using deadly force *only* when the officer reasonably believes, based on the totality of the circumstances, that deadly force is necessary for one of two reasons:
•    to defend against an **imminent threat of death** or serious bodily injury to the officer or another person, or
•    to apprehend a fleeing **felon** if the officer reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended. [Neither applied].
The Bill became law on January 1, 2020.

1 McClain's DNA was unfortunately on the entire block and literally on the hands of
2 his killer who was seen searching the block after the shooting.

3        37.    Plaintiffs assert that Defendant DUMAGUINDIN's extended presence
4 on scene *after* the shooting was yet another violation of department policy.

5        38.    However, regardless of whether or not Mr. McClain possessed a
6 weapon, Dumaguindin was completely unjustified in shooting him multiple times
7 in the back while he was running away and was not posing a direct threat to
8 Dumaguindin's life or any other life.  In fact Defendant DUMAGUINDIN was
9 more of a threat to the innocent bystanders than Mr. McClain.  One of
10 DUMAGUINDIN's bullets "whizzed" past the head of one witness and another
11 lodged into a private residence next to a bedroom window.

12        39.    Pasadena Police Department has had a troubling pattern of "policing
13 itself" and failing to discipline officers who engage in misconduct and killing
14 unarmed Black men and therefore cannot expect the public to simply *trust their*
15 *words* as far as officer related deaths are concerned.  Defendant PEREZ cannot
16 simply press release his problems away and complain about the multiple tort
17 claims in this matter.  The citizens of Pasadena deserve more and of course the
18 family of Anthony McClain deserves more as well.  Surely Defendant Perez knows
19 that they would gladly take Anthony back in place of all the tort claims the Chief
20 seems to be so bothered by.  It would help if the Perez press releases did not
21 contain lies.  The Chief wants credit for releasing the name of shooting officer
22 Dumaguindin when any and everyone who can read knows that he fought the
23 release of the officer name and that information was ultimately released by
24 Plaintiffs' counsel, not the Chief who initially refused respond to multiple news
25 organizations who confronted him with the information. If Defendant PEREZ will
26 tell an untruth about something so easily disproven as the release of Officer
27 Dumaguindin's name, what more important piece of evidence would he advance a

28

1  falsehood about?

2      40.   Defendant Chief Perez would be well advised to know that Black

3  people in Northwest Pasadena remain concerned with the systematic racism at PPD

4  and racially motivated traffic stops.  They feel the stops are placing them and their

5  families in direct danger. When PPD officers pull over citizens in South Arroyo

6  and Hastings Ranch and order them out of their car for not having a front license

7  plate as much as they pull over Blacks for those same minor infractions, the

8  distrust may start to dissipate[3].  It's not that there are so many more guns in

9  Northwest Pasadena, it's that PPD officers **would not dare** pull over cars for front

10 license plate violations in affluent White neighborhoods. Community members

11 want a Chief for all people in the City of Pasadena and not just the officers at the

12 police department.  From the onset, Defendant PEREZ was advocate-in-Chief for

13 Defendant Dumaguindin, seeking only information to justify the shooting as

14 oppose to *objectively investigation* the shooting.

### FIRST CLAIM FOR RELIEF

### Unreasonable Search and Seizure—Excessive Force & Torture

### (42 U.S.C. § 1983) (Against All Officer Defendants)

18     41.   Plaintiffs repeat and re-allege each and every allegation in paragraphs

19 1 through 40 of this Complaint with the same force and effect as if fully set forth

20 herein.

21     42.   Defendants, and DOES 1-10, and each of them, joined in and carried

---

[3] More reason for distrust: Pasadena Sgt. Keith Gomez is one of the investigators
working on Mr. McCLAIN's case.  Gomez has killed more Back men than anyone at PPD.  He
has been involved in some of the PPD's most controversial police killings of Black men and he
has provided a statements in the past that was contradicted by videotaped evidence.
    On April 10, 2004, Gomez put LaMont Robinson in a chokehold and several months later
Mr. Robinson died. On April 24, 2004, Gomez shot and killed Maurice Clark. Gomez killed two
Black men in different incidents ***in one single month*** while then Lt. John Perez was his direct
supervisor.  Shortly thereafter Gomez was involved in a public incident at the Rose Bowl that
involved him being detained for obstruction of justice - was he disciplined? No.  He was
promoted to Sergeant.  Again, during this time, Defendant Chief Perez was his direct supervisor.

1   out a mutually supportive conspiracy to deprive Mr. McClain of his Constitutional
2   right to life and right to be free from unreasonable seizures, and due process
3   guarantees by participating in a corrupt effort to deny and violate Plaintiff's
4   constitutional rights.

5       43.    The unjustified killing deprived Mr. McCLAIN of his right to be
6   secure in his person against unreasonable searches and seizures as guaranteed to
7   him under the Fourth Amendment to the United States Constitution and applied to
8   state actors by the Fourteenth Amendment.

9       44.    The unreasonable use of force by all Defendant OFFICERS excluding
10  Chief PEREZ (hereinafter "Officer Defendants" or "OFFICERS") deprived the
11  DECEDENT of his right to be secure in his person against unreasonable searches
12  and seizures as guaranteed to DECEDENT under the Fourth Amendment to the
13  United States Constitution and applied to state actors by the Fourteenth
14  Amendment.

15      45.    As a result, DECEDENT suffered extreme pain and suffering and
16  eventually suffered a loss of life and of earning capacity. Plaintiffs have also been
17  deprived of the life-long love, companionship, comfort, support, society, care, and
18  sustenance of DECEDENT, and will continue to be so deprived for the remainder
19  of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a
20  loss of financial support.

21      46.    As a result of the conduct of the Officer Defendants, they are liable
22  for DECEDENT's injuries, either because they were integral participants in the use
23  of excessive force, or because they failed to intervene to prevent these violations.

24      47.    This use of deadly force was excessive and unreasonable under the
25  circumstances, especially since DECEDENT never physically injured or attempted
26  to physically injure the Officer Defendants, or anyone else prior to being killed.
27  Further, DECEDENT never verbally threatened anyone and never brandished a
28  weapon at the Officer Defendants, or anyone else, prior to being killed.

1  Defendants' actions thus deprived DECEDENT of his right to be free from
2  unreasonable searches and seizures under the Fourth Amendment and applied to
3  state actors by the Fourteenth Amendment.

4      48.    The conduct of the Officer Defendants was willful, wanton, malicious,
5  and done with reckless disregard for the rights and safety of DECEDENT and
6  therefore warrants the imposition of exemplary and punitive damages as to the
7  Officer Defendants.

8      49.    Plaintiffs seek both survival and wrongful death damages for the
9  violation of DECEDENT's federal and state constitutional rights and applicable
10  laws.

11      50.    Plaintiffs also seek attorney fees under this claim.

12
13                  **SECOND CLAIM FOR RELIEF**
**Unreasonable Search and Seizure—Denial of / Inadequate Medical Care**
14  **(42 U.S.C. § 1983)** (Against the Officer Defendants)

15      51.    Plaintiffs repeat and re-allege each and every allegation in paragraphs
16  1 through 50 of this Complaint with the same force and effect as if fully set forth
17  herein.

18      52.    On information and belief, Plaintiffs assert that the Officer Defendant
19  DUMAGUINDIN, DOE 2 and ROSA did not immediately summons medical
20  attention for Mr. MCCLAIN nor did they provide adequate first aid.

21      53.    Due to the denial of or inadequately administered medical care by the
22  Officer Defendants, DECEDENT was deprived of his right to be secure in his
23  person against unreasonable searches and seizures as guaranteed to DECEDENT
24  under the Fourth Amendment to the United States Constitution and applied to state
25  actors by the Fourteenth Amendment.

26      54.    As a result, DECEDENT suffered extreme pain and suffering and
27  eventually suffered a loss of life and earning capacity. Plaintiffs have also been
28  deprived of the life-long love, companionship, comfort, support, society, care, and

1 | sustenance of DECEDENT, and will continue to be so deprived for the remainder
2 | of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a
3 | loss of financial support.

4 | 55. The Officer and firefighter DOE Defendants knew that failure to
5 | provide timely medical treatment to DECEDENT could result in further significant
6 | injury or the unnecessary and wanton infliction of pain, but disregarded that
7 | serious medical need, causing DECEDENT great bodily harm and death.

8 | 56. The conduct of the Officer Defendants and firefighter DOE
9 | Defendants was willful, wanton, malicious, and done with reckless disregard for
10 | the rights and safety of DECEDENT and therefore warrants the imposition of
11 | exemplary and punitive damages as to the Officer Defendants.

12 | 57. Plaintiffs bring this claim as successors-in-interest to DECEDENT,
13 | and seek both survival and wrongful death damages for the violation of
14 | DECEDENT's rights.

15 | 58. Plaintiffs also seek attorney's fees under this claim.

16

17 |                          **THIRD CLAIM FOR RELIEF**
                             **Substantive Due Process**
18 |       **(42 U.S.C. § 1983) (Against Defendant the Officer Defendants)**

19 | 59. Plaintiffs repeat and re-allege each and every allegation in paragraphs
20 | above with the same force and effect as if fully set forth herein.

21 | 60. Plaintiffs had a cognizable interest under the Due Process Clause of
22 | the Fourteenth Amendment of the United States Constitution to be free from state
23 | actions that deprive them of life, liberty, or property in such a manner as to shock
24 | the conscience, including but not limited to, unwarranted state interference in
25 | Plaintiffs' familial relationship with their father, and grandson Mr. McCLAIN.

26 | 61. Mr. McCLAIN had a cognizable interest under the Due Process
27 | Clause of the Fourteenth Amendment of the United States Constitution to be free
28 | from state actions that deprive him of life, liberty, or property in such a manner as

1    to shock the conscience, including but not limited to, unwarranted state

2    interference in Plaintiffs familial relationship with the DECEDENT.

3       62.   DECEDENT had a cognizable interest under the Due Process Clause

4    of the Fourteenth Amendment of the United States Constitution to be free from

5    state actions that deprive him of his right to **life**, liberty, or property in such a

6    manner as to shock the conscience.

7       63.   As a result of the excessive force by the Officer Defendants,

8    DECEDENT died. Plaintiffs were thereby deprived of their constitutional right of

9    familial relationship with DECEDENT.

10       64.   The Officer Defendants, acting under color of state law, thus violated,

11    WILLIAMS', AFAESE's and BAILEY's Fourteenth Amendment right to be free

12    from unwarranted interference with their familial relationship with Mr.

13    McCLAIN's.

14       65.   The aforementioned actions of the Defendants, along with other

15    undiscovered conduct, shock the conscience, in that they acted with deliberate

16    indifference to the constitutional rights of DECEDENT and Plaintiffs, and with

17    purpose to harm unrelated to any legitimate law enforcement objective.

18       66.   The Officer Defendants, acting under color of state law, thus violated

19    the Fourteenth Amendment rights of DECEDENT and Plaintiffs.

20       67.   As a direct and proximate cause of the acts of the Officer Defendants,

21    DECEDENT experienced severe pain and suffering and lost his life and earning

22    capacity. Plaintiffs suffered extreme and severe mental anguish and pain and have

23    been injured in mind and body. Plaintiffs have also been deprived of the life-long

24    love, companionship, comfort, support, society, care and sustenance of

25    DECEDENT, and will continue to be so deprived for the remainder of their natural

26    lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial

27    support.

28      ///

68. As a result of the conduct of the Officer Defendants, they are liable for DECEDENT'S injuries, either because they were integral participants in the denial of due process, or because they failed to intervene to prevent these violations.

69. The conduct of the Officer Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to the Officer Defendants.

70. Plaintiffs bring this claim individually and as successors-in-interest to DECEDENT, and seek both survival and wrongful death damages for the violation of both Plaintiffs' and DECEDENT's rights.

71. Plaintiffs also seek attorney fees under this claim.

## FOURTH CLAIM FOR RELIEF

### *Monell* Allegations

### Municipal Liability for Unconstitutional Custom or Policy

### (42 U.S.C. § 1983) (Against PEREZ, DOES 3-10 and CITY)

72. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 71 of this Complaint with the same force and effect as if fully set forth herein.

73. The Defendant OFFICERS' vicious killing of Anthony McCLAIN, who never physically injured or attempted to injure the Officer Defendants or anyone prior to being beaten and killed was immediately defended by Defendant PEREZ. Defendant Chief PEREZ, seemingly devoid of the concept of equal protection under the law, advocated and ratified policies that inherently jeopardizes the safety the citizens in Pasadena, specifically young men in the Black community. PEREZ has condoned and ratified policies that allow officers involved in critical incidents to view patrol camera footage before making a statement; he

1  repeatedly refuses discipline officers accused of wrongdoing against community
2  members of color and he has emboldened the officers by creating and maintaining
3  'an environment where they know that no matter what they do they will not be
4  punished in anyway for inflicting serious bodily injury or killing people of color.

5      74.    As customary with the policy of the Pasadena Police Department,
6  Defendant CITY, the Chief and Chiefs before him have never disciplined for the
7  use of excessive force on people of color.

8      75.    For some time prior to August 15, 2020 (and continuing to the present
9  date) the individual OFFICER Defendants, deprived Plaintiffs and DECEDENT of
10  the rights and liberties secured to them by the Fourth and Fourteenth Amendments
11  to the United States Constitution, in that, said defendants and their supervising and
12  managerial employees, agents, and representatives, acting with gross negligence
13  and with reckless and deliberate indifference to the rights and liberties of the public
14  in general, and of Plaintiffs and DECEDENT, and of persons in their class,
15  'situation and comparable position in particular, knowingly maintained, enforced
16  and applied an official recognized custom, policy, and practice of:

17      (a) Employing and retaining as police officers and other personnel, including
18  the Officer Defendants, DOES 1- 5, at all times material herein knew or reasonably
19  should have known had dangerous propensities for abusing their authority and for
20  mistreating citizens by failing to follow written CITY police department's policies,
21  including the use of excessive force;

22      (b) Of inadequately supervising, training, controlling, assigning, and
23  disciplining CITY officers, and other personnel, including the Officer Defendants,
24  who Defendant CITY knew or in the exercise of reasonable care should have
25  known had the aforementioned propensities and character traits, including the
26  propensity for violence and the use of excessive force;

27      (c) By maintaining grossly inadequate procedures for reporting, supervising,
28  investigating, reviewing, disciplining and controlling the intentional misconduct by

1   Defendant the Officer Defendants, who are police officers of CITY;

2         (d) By failing to discipline CITY officers' conduct, including but not limited
3   to, excessive force;

4         (e) By ratifying the intentional misconduct of Defendant the Officer
5   Defendants, who are officers of CITY;

6         (f) By having and maintaining an unconstitutional policy, custom, and
7   practice of using excessive force, including deadly force, which also is
8   demonstrated by inadequate training regarding these subjects. The policies,
9   customs, and practices of DOES 1- 5, were done with a deliberate indifference to
10  individuals' safety and rights; and

11        (g) By failing to properly investigate claims of unlawful detention and
12  excessive force by CITY police officers.

13        76.   The Pasadena Police Department has a pattern and practice of using
14  excessive or deadly force on young men of color. In 2006, Pasadena Police officers
15  face planted **DAMIEN ESTEEM's,** face into cement in front of his kids after he
16  merely asked why police was on his property. Officers released Mr. Esteem, a
17  Black man, without arrest of citation, but later charged him criminally when he
18  made a personnel complaint for excessive force. The criminal charges were
19  dismissed and Mr. Esteem accepted a settlement to dismiss his excessive force
20  lawsuit for the scratches to his face. Then, Sgt. Kelly Evans was allowed to
21  investigate complaints against himself and his officers. Of course no officers or
22  supervisors were disciplined.

23        77.   In 2004, rogue Pasadena Police officer Gomez beat, and choked
24  unarmed Black man, **LAMONT ROBINSON** to death…to protect Mr. Robinson
25  from the harm of swallowing narcotics.  Later in the same month Gomez shot and
26  killed another Black man, Maurice **CLARK,** and provided a statement that was
27  contradicted by the patrol car footage. He was promoted after the incidents.

28        78.  In March 2012, to avoid videotaped contradictions, Officers Mathew

1   Griffin and Jeffrey Newlen decided NOT to activate their patrol unit camera in

2   direct violation of the PPD direct pursuit policy when they hunted 19 year-old

3   **KENDREC McDADE** down in stealth mode (with no lights and siren). The

4   terrified teen ran for his life, but could not out run a bullet and was shot multiple

5   times in the back. Griffin then ran him over with his patrol car as if the gun shots

6   were not enough. Griffin and Newlen failed to perform CPR or first aid and left the

7   young man **handcuffed and bleeding out** on the same street he was conceived on,

8   asking the responding paramedics: "why did they shoot me?" before dying.

9        79.   The District Attorney's Office immediately rubberstamped the

10   statements of the officers with little or no investigations and ignored independent

11   counsel Michael Gennaco's early indications that the Pasadena PD had failed to

12   implement the recommendations offered in the *Barnes Report* after the fatal 2009

13   officer involved shooting ("OIS") of Leroy Barnes. The McDade parents accepted

14   a settlement dismiss their federal civil rights lawsuit for the killing of Kendrec, and

15   Jeffrey Newlen was promoted to the SWAT team and to field training officer.

16        80.   On September 20, 2016, field training officer **AARON VILLICANA**

17   responded to a call for help from **REGINALD THOMAS** with five other officers.

18   Villacana hit Mr. Thomas so hard and so many times that he broke his hand on

19   Thomas' face, he then kicked him and suffocated him along with the other officers

20   who piled on the mentally distressed man who requested their help. Although

21   VILLICANA was a trained paramedic he left Mr. Thomas in cuffs, hogtied and

22   foaming at the mouth. After being grilled by attorneys in the McDade matter for

23   failing to un-handcuff and administer first aid, Mathew Griffin arrived and un-

24   handcuffed Mr. Thomas to administer first aid to no avail. This begs the question:

25   Does every individual officer at PPD have to be sued to get them to protect the life

26   of their detainee?

27        81.   Top brass at the Pasadena Police Department have a long history of

28   refusing to discipline officers for excessive for on people of color and stonewalling

1  and/ or failing to cooperate with investigations into allegations of excessive force,

2  specifically but not limited to Defendant CHIEF PEREZ and inquiries by local and

3  federal investigators into the afore-mentioned killing of KEDREC McDADE and

4  third party investigations into that matter.

5       82.   Defendants, together with various other officials, whether named or

6  unnamed, had either actual or constructive knowledge of the deficient policies,

7  practices and customs alleged in the paragraphs above. Despite having knowledge

8  as stated above these defendants condoned, tolerated and through actions and

9  inactions thereby ratified such policies. Said defendants also acted with deliberate

10  indifference to the foreseeable effects and consequences of these policies with

11  respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals

12  similarly situated.

13      83.   By perpetrating, sanctioning, tolerating and ratifying the outrageous

14  conduct and other wrongful acts, Defendant PEREZ, acted with an intentional,

15  reckless, and callous disregard for the life of DECEDENT, and Plaintiffs'

16  constitutional rights. Defendant PEREZ, each of their actions were willful, wanton,

17  oppressive, malicious, fraudulent, and extremely offensive and unconscionable to

18  any person of normal sensibilities.

19      84.   Furthermore, the policies, practices, and customs implemented and

20  maintained and still tolerated by the CITY, and Defendant PEREZ and unknown

21  Defendants were affirmatively linked to and were a significantly influential force

22  behind the injuries of DECEDENT and Plaintiffs.

23      85.   By reason of the aforementioned acts and omissions of Defendants

24  DOES 1-10, Plaintiffs have suffered loss of love, companionship, affection,

25  comfort, care, society, and future support. Accordingly, Defendants DOES 1-10,

26  each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

27      86.   By reason of the aforementioned policies and practices of Defendants,

28  DECEDENT was severely injured and subjected to pain and suffering and lost his

1   life. Plaintiffs seek wrongful death and survival damages under this claim.

2

3                       **FIFTH CAUSE OF ACTION**
4                            **CONSPIRACY**
                      **(Per 42 U.S.C. Section 1985)**
5                       **Against All Defendants**

6   ·      87.    Plaintiffs repeat and re-allege each and every allegation in paragraphs
7   1 through 86 of this Complaint with the same force and effect as if fully set forth
8   herein.

9          88.    Defendants, together with other unknown co-conspirators, including
10   police supervisory, and command personnel, together reached an understanding,
11   engaged and continue to engage in a course of conduct, and otherwise jointly acted
12   and conspired among and between themselves to commit unconstitutional overt
13   acts, including the racial profiling and harassment of African Americans in
14   Northwest Pasadena, retaliation against those who object to said violations of
15   constitutional rights, and deliberate indifference to those officers who deprive
16   others of constitutional rights.

17         89.    Because the conspiracy or conspiracies and the overt actions in
18   furtherance thereof were done and continue to be done with the knowledge and
19   purpose of depriving DECEDENT, who is African American, and numerous other
20   African- American victims of the equal protection of the laws and equal privilege
21   and immunities under the law, and with racial animus toward the Plaintiff and the
22   other victims of this racially motivated conspiracy, the Defendants also deprived
23   Plaintiff of his right to Equal Protection of the laws under the Fourteenth
24   Amendment, and 42 U.S.C.§1985.

25         90.    Defendants together with other unknown Doe co-conspirators,
26   knowing that the above § 1985 conspiracy to deprive African-Americans of their
27   rights, and having the power, authority and duty to prevent or aid in preventing the
28   commission of the acts in furtherance of the conspiracy, neglected and refused to

1  do so, in violation of 42 U.S.C. § 1986.

2      91.    As a direct and proximate result of the foregoing, DECEDENT

3  sustained injury and damage as alleged above.

## SIXTH CLAIM FOR RELIEF
### Battery (Wrongful Death)
### (Cal. Govt. Code § 820 and California Common Law)
(Against the Officer Defendants and CITY)

9      92.    Plaintiffs repeat and re-allege each and every allegation in paragraphs

10  1 through 91 of this Complaint with the same force and effect as if fully set forth

11  herein.

12      93.    Defendant Officer Edwin DUMAGUINDIN, while working as a

13  police officer, and DOE Defendants for the Pasadena Police Department, and

14  acting within the course and scope of their employment with the CITY,

15  intentionally shot DECEDENT multiple times, **in the back** while DECEDENT

16  was running away, thereby using unreasonable and excessive force against him. At

17  the time of the shots, DECEDENT was sprinting away after kicking off his shoes

18  and did not pose an immediate threat of death or serious bodily injury to anyone,

19  including **DUMAGUINDIN** and DOE OFFICERS.

20      94.    As a result of the actions of Defendant Officer Edwin

21  DUMAGUINDIN and DOE OFFICERS, DECEDENT suffered severe pain and

22  suffering and visibly died painfully from his injuries. Defendant Officer Edwin

23  DUMAGUINDIN and DOE OFFICERS had no legal justification for using force

24  against DECEDENT, and their use of force while carrying out their duties as

25  officers for the CITY was an unreasonable and non-privileged use of force.

26      95.    As a result of their misconduct, Defendant Officer Edwin

27  DUMAGUINDIN and DOE OFFICERS are liable for DECEDENT's injuries,

28  either because they were integral participants in the shooting, or because they

1 | failed to intervene to prevent these violations.

2 | 96. As a direct and proximate result of the conduct of Defendant Officer
3 | Edwin DUMAGUINDIN and DOE OFFICERS as alleged above, DECEDENT
4 | sustained injuries, endured pain and suffering, eventually died from his injuries,
5 | and also lost his earning capacity.

6 | 97. The CITY is vicariously liable for the wrongful acts of Defendants
7 | Defendant Officer Edwin DUMAGUINDIN and DOE OFFICERS pursuant to
8 | section 815.2(a) of the California Government Code, which provides that a public
9 | entity is liable for the injuries caused by its employees within the scope of the
10 | employment if the employee's act would subject him or her to liability.

11 | 98. The conduct of Defendant Officer Edwin DUMAGUINDIN and DOE
12 | OFFICERS was malicious, wanton, oppressive, and accomplished with a
13 | conscious disregard for the rights of Plaintiffs and DECEDENT, entitling
14 | Plaintiffs, individually and as a successors-in- interest to DECEDENT, to an award
15 | of exemplary and punitive damages as to DOE OFFICERS.

16 | 99. Plaintiffs bring their claims individually and as a successors-in-
17 | interest to DECEDENT, and seek both survival and wrongful death damages under
18 | this claim pursuant to Cal Code of Civil Procedure § 377.60, and 377.30
19 | respectively. Plaintiffs also seek attorney's fees under this claim.

20 | ///
21 | ///
22 | ///
23 |
24 |
25 |
26 |
27 |
28 |

## SEVENTH CLAIM FOR RELIEF
### Negligence (Wrongful Death)
### (Cal. Govt. Code § 820 and California Common Law)

100.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 99 of this Complaint with the same force and effect as if fully set forth herein.

101.   The actions and inactions of the Defendants, were negligent and reckless, including but not limited to:

(a) the failure to properly and adequately assess the need to detain, arrest, and use force or deadly force against DECEDENT;

(b) the negligent tactics and handling of the situation with DECEDENT, including the use of deadly force;

(c) racial profiling with the use of pretextual stops;

(d) the negligent detention, arrest, and use of force, including deadly force, against DECEDENT;

(e) the failure to provide prompt medical care to DECEDENT; and

(f) the negligent handling of evidence and witnesses.

102.   Specifically, Chief PEREZ and unknown supervisors at the Pasadena Police Department had a duty to instruct and institute policies and procedures prohibiting protracted restraints persons in a prone position which have proven to be deadly time and time again.

103.   Responsible supervisors, and the Chief failed to discipline officers found to be in violation of using excessive force and therefore emboldening them to use excessive force again in the future.

104.   Chief PEREZ and unknown responsible supervisors failed to train, discipline or fire Pasadena Police officers who engaged in excessive and unreasonable force thereby emboldening the small group of rogue officers, and making matters worse for the hardworking women and men in the department who

1  get unjustly tainted by the acts of these Defendants.

2      105.  As a direct and proximate result of defendants' conduct as alleged

3  above, and other undiscovered negligent conduct, DECEDENT was caused to

4  suffer severe pain and suffering and ultimately died and lost earning capacity. Also

5  as a direct and proximate result of defendants' conduct as alleged above, Plaintiffs

6  suffered extreme and severe mental anguish and pain and have been injured in

7  mind and body. Plaintiffs also have been deprived of the life-long love,

8  companionship, comfort, support, society, care and sustenance of DECEDENT,

9  and will continue to be so deprived for the remainder of their natural lives.

10  Plaintiffs also are claiming funeral and burial expenses and a loss of financial

11  support.

12      106.  CITY is vicariously liable for the wrongful acts of the Officer

13  Defendants pursuant to section 815.2 of the California Government Code, which

14  provides that a public entity is liable for the injuries caused by its employees

15  within the scope of the employment if the employee's act would subject him or her

16  to liability.

17      107.  Plaintiffs bring this claim as a successors-in-interest to DECEDENT,

18  and seek wrongful death damages.

19      108.  Plaintiffs are seeking wrongful death damages under this claim.

20

21                  **EIGHTH CAUSE OF ACTION**

22          (Violation of the *BANE* Act Cal. Civil Code § 52.1)

23          (By All Plaintiffs against all Defendants)

24      109.  Plaintiffs repeat and re-allege each and every allegation in paragraphs

25  1 through 91of this Complaint with the same force and effect as if fully set forth

26  herein.

27  ///

28  ///

110.   California Civil Code, Section 52.1.(the *Bane* Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

111.   On information and belief, Defendant Officers and DOE OFFICERS, inclusive, while working for the CITY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against DECEDENT, by integrally participating and/ or failing to intervene in the above violence, and by denying him necessary medical care.

112.   Additionally, Anthony McCLAIN had a constitutional right to walk away after exiting the car. DUMAGUINDIN's non-consensual touching of Anthony's arm before an alleged weapon (as police have asserted) can be seen was unconstitutional.

113.   Also, when Defendant Dumaguindin touched Mr. McCLAIN, he interfered with his civil rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws; and later to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

114.   On information and belief, Defendants intentionally and spitefully committed the above acts to discourage DECEDENT from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy.

115.   On information and belief, DECEDENT reasonably believed and understood that the violent acts committed by Defendants, were intended to discourage him from exercising the above civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

116.   Defendants thus successfully interfered with the above civil rights of DECEDENT and Plaintiffs.

117.   The conduct of Defendants was a substantial factor in causing Plaintiffs' harms, losses, injuries, and damages.

118.   CITY is vicariously liable for the wrongful acts of Defendants and DOE OFFICERS, inclusive, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

119.   The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT's and Plaintiffs' rights, justifying an award of exemplary and punitive damages as to the individual responding Defendants and DOE OFFICERS.

120.   Plaintiffs bring this claim as DECEDENT's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seek survival damages for the violation of DECEDENT's rights. Plaintiffs also seek attorney's fees.

### NINTH CAUSE OF ACTION
### "TORTS-IN-ESSENCE"
### (Against Individual Defendant OFFICERS excluding PEREZ)

121.   Plaintiffs restate and incorporate by reference, as though fully set forth herein, the allegations contained in all paragraphs above.

122.   Pursuant to CA Gov. Code Section 815.6, which creates a private right of action for the alleged breaches of the various penal code sections listed in this Complaint, the officers Defendants and each of them, owed to Plaintiffs non-consensual duties, and Plaintiffs hereby set forth that the individual Officer Defendants violated the following California Penal Code Sections: 187 (**Murder**), 149 (felonious excessive force by a peace officer), 240 (assault), 242 (battery), false police report (148.5) perjury (118), false police reports (118.1) and conspiracy (182 (a)).

///

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray, and request entry of judgment in their favor and against Defendants, as follows:

123.   For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial;

124.   For funeral and burial expenses, and loss of financial support;

125.   For punitive damages against the individual defendants in an amount to be proven at trial;

126.   For interest;

127.   For reasonable costs of this suit and attorneys' fees; and

128.   For such further other relief as the Court may deem just, proper, and appropriate.

DATED: 10/1/20                           LAW OFFICES OF CAREE HARPER

By: Caree Harper
Attorneys for PLAINTIFFS

**DEMAND FOR JURY TRIAL**

All Plaintiffs demand a jury trial.

LAW OFFICES OF CAREE HARPER

By: Caree Harper
Attorneys for PLAINTIFFS