# Exhibit C



# Qualified Assignment and Release Agreement
*In Accordance With Internal Revenue Code Section 130*

**"Claimant(s)":**  B___ M___

**"Assignor(s)":**
    Assignor(1)    City of Pasadena

**"Settlement Agreement":**
[Date and title of settlement agreement, order or other document embodying the Assignor's obligation to make the agreed periodic payments]

**"Assignee":**    Pacific Life & Annuity Services, Inc.

**"Annuity Issuer":**    Pacific Life

**"Effective Date":**

**This Qualified Assignment and Release Agreement** is made and entered into as of the Effective Date by and among the undersigned parties with reference to the following facts:

A   Claimant(s) and Assignor are parties to or are otherwise subject to or entitled to receive payments under the above-referenced Settlement Agreement, under which Assignor has liability to make certain periodic payments to or for the benefit of Claimant(s) as specified or referred to in paragraph 12 of this Agreement (the "Periodic Payments"); and

B   Assignor and Assignee wish to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986, as amended (the "Code").

**Now, therefore**, in consideration of the foregoing and for other good and valuable consideration, the parties agree as follows:

1. **Assignment and Assumption; Release of Assignor**. Assignor hereby assigns to Assignee, and Assignee hereby accepts and assumes, all of Assignor's liability to make the Periodic Payments. Each Claimant hereby accepts and consents to such assignment by Assignor and assumption by Assignee. Effective on the Effective Date, each Claimant hereby releases and discharges Assignor from all liability to make the Periodic Payments.

Pacific Life refers to Pacific Life Insurance Company and its affiliates, including Pacific Life & Annuity Company. Insurance products are issued by Pacific Life Insurance Company in all states except New York and in New York by Pacific Life & Annuity Company. Product availability and features may vary by state. Each company is solely responsible for the financial obligations accruing under the products it issues. Insurance product and rider guarantees are backed by the financial strength and claims-paying ability of the issuing company.

2. **Nature of Periodic Payments**.  The Periodic Payments constitute
    i. damages (other than punitive damages), whether by suit or agreement, or
    ii. compensation under a workers' compensation act,

    on account of personal injury or sickness in a case involving physical injury or physical sickness, within the meaning of Sections 130(c) and 104(a) of the Code.

3. **Extent of Assignee's Liability**.  Assignee's liability to make the Periodic Payments shall be no greater than the liability of Assignor immediately prior to the Effective Date. Assignee assumes no liability other than the liability to make the Periodic Payments. Assignee's liability to make the Periodic Payments shall be unaffected by any bankruptcy or insolvency of Assignor.

4. **Qualified Funding Asset**.  Assignee will fund the Periodic Payments by purchasing from Annuity Issuer a "qualified funding asset," as defined in Section 130(d) of the Code, in the form of an annuity contract (the "Annuity") issued by Annuity Issuer and providing for payments corresponding to the Periodic Payments. Assignee shall be designated as the owner of the Annuity.  All rights of legal ownership and control of the Annuity shall (subject to paragraph 9 of this Agreement) be and remain vested exclusively in Assignee; provided, however, that the Annuity shall be used by Assignee to fund the Periodic Payments and shall at all times be designated by Assignee on its records as being taken into account, under Section 130 of the Code, with respect to this Agreement.  Notwithstanding anything to the contrary contained in this Agreement, neither any Claimant nor any Successor Payee shall have any rights with respect to the Annuity or the payments thereunder that would cause any amount attributable to the Annuity to be currently includible in the recipient's income or would otherwise affect the determination of when any recipient is treated as having received any payment for income tax purposes, or would otherwise prevent this Agreement from satisfying all of the conditions for a "qualified assignment" within the meaning of Section 130(c) of the Code.

5. **Delivery of Payments**.  Assignee may have Annuity Issuer send payments directly to a Claimant, or, if applicable, to a Successor Payee (as defined in paragraph 8 of this Agreement), or deliver payments by electronic funds transfer to an FDIC-insured depository institution in the United States for credit (directly or indirectly) to an insured account in the name of such Claimant or Successor Payee. Such direction of payments under the Annuity shall not be deemed to afford the Claimant or any Successor Payee any rights of ownership or control of the Annuity.  Each Claimant and any Successor Payee shall at all times keep Annuity Issuer apprised of such Claimant's or Successor Payee's current street address and telephone number and, if such Claimant or Successor Payee receives payments by electronic funds transfer, the name, address, bank identifier number (routing number) and telephone number of the applicable depository institution and the account number of the account to which the payments are to be credited.

6. **Discharge of Liability**.  The Assignee's liability to make each Periodic Payment to the Claimant or Successor Payee designated to receive such payment shall be discharged automatically at such time as a corresponding payment is made to such Claimant or Successor Payee by the Annuity Issuer.

7. **Acceleration, Transfer of Payment Rights**.  None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be
    i. Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or
    ii. Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

No Claimant or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

8. **Contingent Beneficiaries**. Any Periodic Payments to be made after the death of any Claimant or Successor Payee shall be made to such party as shall have been designated in, or in accordance with, the Settlement Agreement or, if the Settlement Agreement does not provide for such designation, then to the party designated in conformity with this paragraph 8. Any party so designated is referred to in this Agreement as a "Contingent Beneficiary." If no Contingent Beneficiary is living at the time of the death of a Claimant or Successor Payee, payment shall be made to the decedent's estate. As used in this agreement the term "Successor Payee" refers to a Contingent Beneficiary or an estate that has become entitled to receive Periodic Payments following the death of a Claimant or a Successor Payee. Except as otherwise provided in the Settlement Agreement, no designation or change of designation of a Contingent Beneficiary shall be effective unless such change (i) is requested in a written request submitted to Assignee (or its authorized agent) in accordance with Assignee's customary procedures for processing such requests; and (ii) is confirmed by Assignee (or its authorized agent). Except for a designation that is expressly identified in the Settlement Agreement as irrevocable, any designation of a Contingent Beneficiary shall be deemed to be revocable; and no party that is designated as a Contingent Beneficiary (other than a party irrevocably designated as a Contingent Beneficiary in the Settlement Agreement) shall, solely by virtue of its designation as a Contingent Beneficiary, be deemed to have any cognizable interest in any Periodic Payments.

   **Note:** Beneficiaries section only applies to guaranteed benefits (Period Certain, Lump Sum(s), Life with Certain payments).

9. **Failure of Settlement Agreement**. If at any time prior to completion of the Periodic Payments, the Settlement Agreement is declared terminated in a final, non-appealable order of a court of competent jurisdiction (or in the case of a workers' compensation settlement, a final order of the applicable workers' compensation authority): (i) the assignment by Assignor to Assignee of the liability to make the Periodic Payments, and Assignee's acceptance of such assignment shall be of no force or effect; (ii) Assignee shall be conclusively deemed to be acting as the agent of Assignor; (iii) the Annuity shall be owned by Assignor; (iv) Assignee shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.

   **Failure to Satisfy Section 130(c)**. If at any time prior to completion of the Periodic Payments, it is conclusively determined that the requirements of Section 130(c) of the Code have not been satisfied in connection with this Agreement in a final, non-appealable ruling or order: (i) the assignment by Assignor to Assignee of the liability to make the Periodic Payments, Assignee's acceptance of such assignment shall be of no force or effect; (ii) Assignee shall be conclusively deemed to be acting as the agent of Assignor; (iii) the Annuity shall be owned by Assignor, which shall retain the liability to make the Periodic Payments; (iv) Assignee shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.

10. **Governing Law; Disclosure of Certain Tax Information; Binding Effect.**

    (i) This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of **California** ;[1] provided, however, that any Transfer of Payment Rights under this Agreement may be subject to the laws of other states in addition to the state designated above.

    (ii) This Agreement shall be binding upon the parties hereto and their respective successors, heirs, executors, administrators and permitted assigns, including without limitation any party asserting an interest in Payment Rights.

11. **Advice, Comprehension of Agreement**.  In entering into this Agreement, each Claimant represents and warrants that (i) such Claimant has relied solely upon the legal and tax advice of such Claimant's own attorneys and other advisors or has had the opportunity to seek competent legal and tax advice, who are the attorneys and advisors of such Claimant's choice, concerning the legal and income tax consequences of this Agreement; and (ii) the terms of this Agreement have been completely read by and explained to such Claimant and are fully understood and voluntarily accepted by such Claimant.

12. **Description of Periodic Payments**. The Periodic Payments are as set forth in attached **Addendum No. 1**, which is hereby incorporated in and made a part of this Agreement.

---

1 *In choosing governing law the parties should be aware that the effectiveness of both contractual and "legal" restriction on assignment of rights to receive future Periodic Payments – including (i) contractual restrictions integral to the intended tax treatment of periodic payments and the annuities held as qualified funding assets and (ii) statutes, regulations and "rule[s] of law" prohibiting, restricting or requiring consent for assignments – may be limited (unintentionally) by sweeping override provisions enacted in §§ 9-406 and 9-408 of Revised Article 9 of the Uniform Commercial Code, which took effect in most states in July, 2001.  Most states have enacted amendments that make the overrides in §§ 9-406 and 9-408 inapplicable to structured settlements; but until appropriate corrective amendments are in effect nationwide, the parties to a qualified assignment may find it advisable to avoid designating as governing law the law of a state that has not yet enacted such amendments.*

**This Qualified Assignment and Release Agreement** is signed in one or more counterparts as of the Effective Date by the following:

**Assignor:** City of Pasadena

By: _____
        Authorized Representative

Title: _____

**Assignee:** Pacific Life & Annuity Services, Inc.

By: _____
        Authorized Representative

Title: _____

**Assignee:** Pacific Life & Annuity Services, Inc.

By: _____
        Authorized Representative

Title: _____

**Claimant:** B███ M███

By: _____

*Approved as to Form and Content:*

_____
Claimant's Attorney

**Addendum No. 1**
**Description of Periodic Payments**

Payee : 
Benefit(s):

1. **Period Certain Annuity** - $3,000.00 payable monthly, guaranteed for 12 year(s), beginning on 01/18/2026, with the last guaranteed payment on 12/18/2037.

2. **Guaranteed Lump Sum** - $100,000.00 paid as a lump sum on 01/18/2026 guaranteed.

3. **Guaranteed Lump Sum** - $250,000.00 paid as a lump sum on 01/18/2029 guaranteed.

**Initials**

**Assignor(s):** _____

**Assignee:** _____

**Assignee:** _____

**Claimant(s):** _____